OPINION
Petitioner-appellant Michael A. Yeauger appeals the judgment and order of the Union County Court of Common Pleas in this declaratory judgment action.
On February 7, 1991, the Union County Common Pleas Court entered an order dissolving appellant's marriage to petitioner-appellee Sheila Gay Yeauger n/k/a Keighley, and ordered appellant to pay support for the parties' two minor children in the amount of $355.79 biweekly. On October 17, 1991, the trial court modified that order downwards. However, appellant apparently moved to Florida shortly after that hearing and stopped making child support payments.[1] On February 19, 1992, the trial court once again modified the original order, setting appellant's obligation at $175.02 per week.
One month prior to that modification, the Union County Child Support Agency had initiated an action pursuant to former R.C. Chapter 3115, Ohio's version of the Uniform Reciprocal Enforcement of Support Act ("URESA"), requesting that Florida enforce appellant's Ohio child support obligation.[2] In accordance with its own statutory enactment of URESA, the Circuit Court, Third Judicial Circuit in and for Columbiana County, Florida (hereinafter "Florida trial court") held a responding URESA hearing. The Florida trial court determined that although appellant's child support obligation in Ohio would continue to accrue at the rate set by the Ohio order, that appellant was only required to pay the amount of $150 biweekly. On January 28, 1993, the Florida trial court subsequently modified this amount to $90 per week, plus 4% administrative fees. Appellant has apparently complied with the Florida trial court's second order. However, a records custodian for the Union County Child Support Agency averred that as of June 1, 1999, appellant is over $31,000 in arrears on his child support payments and nearly $33,000 in arrears on his alimony payments.[3]
On July 3, 1999, the Union County Child Support Enforcement Agency filed the instant complaint for declaratory judgment, asking the Union County Court of Common Pleas for a determination that the Florida trial court lacked jurisdiction to modify appellant's child support obligation, a declaration as to which of the several Ohio child support orders was currently effective, and a declaration as to the specific amount of child support and alimony arrearage owed by appellant. The case was referred to a magistrate, a hearing was held on July 1, 1999, and on that same date the magistrate issued an order declaring in part that "[t]he parties [have] stipulated to the facts in this case as set forth in the Complaint." It does not appear that any further evidence was taken, however the magistrate also directed the parties to brief the issue of whether or not the Florida trial court had jurisdiction to modify Union County's child support order.
On August 5, 1999 the magistrate issued a written opinion, and concluded that the Florida court lacked jurisdiction. The magistrate also determined that even if the Florida court had jurisdiction, that 28 U.S.C.A. 1738(B), the Full Faith and Credit for Child Support Orders Act ("FFCCSOA") applied retroactively to void Florida's child support modification. The magistrate's opinion also declared that the Union County Common Pleas Court's order dated February 19, 1992 was currently in effect and that appellant's child support arrearages should be calculated based upon that order, and further held that appellant's alimony arrears should be calculated based upon a previous order of the trial court that had set appellant's alimony at $1,000. Finally, the magistrate ordered that appellant should be "given credit for any payments for child support and/or alimony that he has made" through the State of Florida.
Appellant filed objections to the magistrate's opinion, but on August 12, 1999, the Union County Court of Common Pleas overruled appellant's objections and adopted the magistrate's opinion. Appellant now asserts four assignments of error with the trial court's judgment.
 The trial court erred in applying the Full Faith and Credit for Child Support Orders [Act] (28 U.S.C. § 1738(B)) to the case at bar.
 The State of Florida had jurisdiction to modify the Ohio Court's support order in 1993.
 It is not clear what set of facts the Court relied on below as there was never a stipulation in the record about what the facts were and the matter should be remanded.
 The trial court lacked jurisdiction to determine the jurisdiction of the Florida Court.
For the sake of economy, we will address appellant's first, second and fourth assigned errors together. Appellant argues that the trial court lacked jurisdiction to determine the jurisdiction of the Florida trial court and that the trial court erred by applying FFCCSOA to void the Florida trial order, and also asserts that the Florida trial court did indeed have jurisdiction to enter the 1993 order modifying his child support payments.[4]
Appellee, on the other hand, argues that under the standard enunciated by the Ohio Supreme Court in County of San Diego v.Elavsky (1979), 58 Ohio St.2d 81, responding URESA courts have no jurisdiction to modify an initiating court's child support orders. Appellee asserts that under Elavsky, the Florida trial court was without jurisdiction to modify the previous Ohio order. Cf. Bobbsv. Cline (1997), 116 Ohio App.3d 46, 50; see also Homewood v.Homewood (December 10, 1993), Geauga App. No. 93-G1768, unreported, 1993 WL 548061.
We agree with appellee's characterization of the Elavsky
decision and believe that it correctly reflects Ohio's interpretation of former Revised Code Chapter 3115. However, Florida's Supreme Court adopted a different reading of URESA's provisions, and has permitted Florida responding courts to determine the extent which an obligor's duty of supporting in an initiating URESA state would be enforced by a Florida responding court. See Koon v. Boulder County Dept. of Soc.Serv. (Florida 1986), 494 So.2d 1126, 1128-29. We also observe in passing that Florida's interpretation has been accepted by the majority of other states. See, e.g., Note, Interstate Enforcement of Support Obligations Through Long Arm Statutes and URESA (1980), 18 J. Fam. L. 537, 549 n. 50, citingIbach v. Ibach (Ariz. 1979), 600 P.2d 1370.
Here, the magistrate apparently applied the Ohio Supreme Court's Elavsky standard to the actions of the Florida trial court, and the magistrate's opinion on the issue was adopted by the trial court. Cf. Homewood, 1993 WL 548061 at *5. Appellee would have us adopt the magistrate's position as well. Appellant, by contrast, argues that the trial court was without jurisdiction to examine the Florida trial court's jurisdiction, and further asserts that the Florida court's action was expressly authorized by the Florida Supreme Court. See Koon, 494 So.2d at 1128-29.
Both arguments implicate the constitutional doctrine of full faith and credit. Generally, the Full Faith and Credit Clause of the United States Constitution requires a State to respect the "public Acts, Records, and Judicial Proceedings of every other State." U.S. Const. Art. IV, Sec. 1. However, we observe that the Supreme Court has determined that prior to crediting a foreign judgment, a State may inquire as to the jurisdictional basis of that judgment. See, e.g., Underwriters Nat. Assur. Co. v. NorthCaroline Life and Acc. and Health Ins. Guaranty Ass'n (1982),455 U.S. 691, 704-05.
While we recognize the authority of Ohio courts to question the jurisdictional basis of foreign orders, we do not believe that full faith and credit permits such an inquiry in this case. Our review of the Florida trial court's orders reveals that they dealt only with the extent to which appellant's child support obligation would be enforced in Florida. The Florida court did not purport to affect appellant's obligations under Ohio law, and in fact specifically noted that appellant's Ohio obligation would continue to accrue at the rate set by the Union County Court of Common Pleas.
Moreover, we believe that even if the orders had been intended to amend appellant's obligation in Ohio, they were incapable of having such an effect.
 If the [obligor] does not rebut the [initiating court's] alleged duty of support [in the responding court], a support order prescribing amount, time and manner of payment is entered. * * * *. [The responding court] may decide the [obligor's] current financial status mandate an increase * * * or, conversely, acknowledge a change in financial circumstances and cut the amount * * *. If there is a "downward modification," most courts recognize the continued existence of the more favorable, original [initiating court] decree and consider it enforceable at a later date either at home or in a more generous forum.
Note, supra, at 549-50 (emphasis added). Appellant's URESA obligation in Florida is a different, although related, obligation to his support due in Ohio. Cf. Shaneyfelt v. Shaneyfelt (1997),118 Ohio App.3d 243, 247-48. We are aware of no case that would require Ohio courts to interpret the Florida trial court's orders as amending appellant's Ohio child support obligation, particularly when those orders do not even purport to do so.
The magistrate also offered as an alternative basis for the decision 28 U.S.C.A. 1738(B), the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"). FFCCSOA was adopted in 1994, and after its adoption Florida courts recognized the statute as essentially preempting the Florida Supreme Court's decision inKoon and other similar decisions in other states. See, e.g.,State Dept. of Revenue v. Fleet (Florida App. 1996),679 So.2d 326, 329 (concluding that FFCCSOA "has preempted Florida law with respect to modification of child support orders in a URESA enforcement action"). However, the magistrate's order, adopted by the trial court, interprets FFCCSOA to retroactively void the authority of responding courts to enter modification orders made prior to the enactment of the statute. We have found no case authority or textual support for this unusual interpretation of FFCCSOA, and do not believe that the statute was intended to operate in this manner.[5] While FFCCSOA may now apply to determine which of two competing orders has priority "for purposes of continuing, exclusive jurisdiction and enforcement,"28 U.S.C.A. 1738(B) (2) (f), it does not void the jurisdiction of a court as to orders previously made.
Finally, we must also note that the Florida trial court's actions appear to be expressly authorized under the Florida Supreme Court's interpretation of URESA. See Koon,494 So.2d at 1128-29. We are uncertain as to why both the magistrate and the trial court believed it was proper to apply an Ohio interpretation of URESA to overrule a Florida trial court's order, particularly one authorized by a Florida Supreme Court decision. Moreover, no attempt has been made by appellant to credit the Florida orders in Ohio. Unless and until such an attempt has been made, the Florida orders can have no effect on appellee's rights in Ohio. Therefore, no actual controversy exists as to the validity of the Florida trial court's orders for an Ohio court to decide.
In sum, we are convinced that the Florida trial court's orders have no effect at all on appellant's obligation or appellee's rights in Ohio. It therefore appears that there is no "real and justiciable issue" regarding the Florida trial court's jurisdiction that was appropriate for declaratory judgment. See,e.g., Halley v. Ohio Co. (1995), 107 Ohio App.3d 518, 524. We therefore sustain appellant's first, second and fourth assignments of error.
Although the briefs are unclear, appellant's third assignment of error appears to be related to the remainder of the magistrate's opinion, which declared which Ohio order was in effect and the rates at which appellant's Ohio support and alimony obligations should be calculated. Appellant argues that reversal and remand is required because it is unclear upon what basis the magistrate's decisions were made. However, our review of the record reveals that the opinion correctly held that the Union County Common Pleas Court's order dated February 7, 1991 remains in effect in relation to appellant's alimony obligation, and that the Union County Common Pleas Court's order dated February 19, 1992 remains in effect regarding appellant's child support obligation. As to these conclusions, the court record speaks for itself and provides a clear basis for the magistrate's decisions and the trial court's subsequent order adopting those decisions. Accordingly, appellant's third assignment of error is overruled.
For the foregoing reasons, the judgment of the Common Pleas Court of Union County is reversed in part and affirmed in part.
Judgment reversed in part and affirmed in part.
BRYANT, P.J., and HADLEY, J., concur.
[1] On January 19, 1993, appellant was found in contempt of the Union County Common Pleas Court for failure to pay his child support and alimony obligations. It does not appear from the record that appellant has ever purged himself of this contempt order.
[2] Effective January 1, 1998, Ohio abandoned URESA and amended Chapter 3115 to adopt the Uniform Interstate Family Support Act ("UIFSA"). Appellee's brief cites and quotes the former law, although we note with some concern that nowhere in the brief does appellee expressly state that the law has been amended or that it is the former law that is being used.
[3] The parties' eldest son turned 22 years old on November 15, 1998. On December 22, 1998, the Union County Child Support Agency filed a motion for his emancipation and an order to amend appellant's child support obligation accordingly, but it does not appear from the record before this Court that the trial court ruled on that motion. The parties' younger son is currently nineteen years old.
[4] We must note that R.C. 2721.02, the applicable declaratory judgments statute, authorizes courts to "declare rights, status, and other legal relations" only. For purposes of analysis, we will assume that a determination of the jurisdiction of a foreign court is the type of relief contemplated by the act.
[5] The magistrate's order also states that "[o]n November 12, 1998 the Florida Court again reviewed the case and further reduced the Obligor's child support order * * * ." No such modification is alleged in the pleadings and no evidence of such a modification is present in the record. We therefore decline to speculate what affect FFCCSOA would have on the Florida trial court's authority to enter that order. Moreover, we suspect that the proper forum for that question to be resolved is in Florida rather than Ohio.