IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-002-CV





DARELD RAY MORRIS, II,



 APPELLANT,


vs.





NEALA STACY LYYTINEN,



 APPELLEE




 




FROM THE DISTRICT COURTS OF BASTROP COUNTY, 21ST & 335TH JUDICIAL DISTRICTS



NO. 16,115, HONORABLES JOHN L. PLACKE & HAROLD R. TOWSLEE, JUDGES PRESIDING



 





 Dareld Ray Morris, II, took a separate appeal from each of two trial-court orders
issued in a suit affecting the parent-child relationship ("SAPCR"). Tex. Fam. Code Ann. 
§ 11.01(5) (West Supp. 1993) ("Family Code"). The appeals have been consolidated. The first
trial-court order increases his child-support obligation on the motion of his former wife. See
Family Code § 14.08(c)(2) (West Supp. 1993). The second order reduces his support arrearage
to judgment and holds him in contempt for failing to pay it. See Family Code §§ 14.40-.41 (West
1986 & Supp. 1993). We will reverse the first order and remand that portion of the cause to the
trial court; we will affirm that part of the second order reducing the arrearage to judgment; and
we will not address Morris's complaint of unlawful imprisonment resulting from the contempt
order.



THE CONTROVERSY


 Morris and Neala Stacy Morris Lyytinen ("Lyytinen") were divorced in Bastrop
County on August 24, 1981. Lyytinen received custody of their two children, and the court
ordered Morris to pay $100 per month in child support. Subsequently, Morris moved to Florida. 
He became delinquent in the support payments. Lyytinen and the children moved to Minnesota.

 In April 1991, Lyytinen sued Morris in a Florida court under the Revised Uniform
Reciprocal Enforcement of Support Act ("RURESA"). Fla. Stat. Ann. §§ 88.011-.371 (West
1987 & Supp. 1993). (1) The Florida court adjudged as follows: (1) Morris owed $2,607.91 under
the Bastrop County court order as of March 26, 1991; (2) he was in contempt of court for failing
to pay such child support; and (3) he might purge himself of contempt by paying specified sums
periodically to the county clerk of the Florida court. Morris made several payments in compliance
with the Florida court order.

 Some months later, Lyytinen and the children moved back to Texas. On April 3,
1992, she filed a motion to modify child support in a SAPCR in Bastrop County district court,
the court with continuing and exclusive jurisdiction. Family Code § 11.05(a) (West Supp. 1993). 
She requested that the court increase child support from $100 to $1,000 per month. Morris was
not present at the hearing on August 12th, but was represented by counsel. After the hearing, the
district court ordered that Morris pay child support in the amount $ 1,000 per month.



CHILD-SUPPORT INCREASE


 In his fifth point of error, (2) Morris contends the trial court abused its discretion in
setting the amount of child support at $1,000 per month. We agree.

 An order of child support will not be disturbed on appeal unless the complaining
party can show a clear abuse of discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.
1990) (citations omitted). The two-part test for "abuse of discretion" is (1) whether the trial
court's exercise of discretion was legally erroneous; and (2) if it were, whether the impact of the
error on the case requires reversal. Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 937
(Tex. App.--Austin 1987, no writ). A court's exercise of discretion may constitute legal error
when the court lacks a sufficient factual basis upon which to make a rational decision. Reyna v.
Reyna, 738 S.W.2d 772, 774 (Tex. App.--Austin 1987, no writ); Landon, 724 S.W.2d at 938.

 In order to modify a previous child-support order, the court must find that the
circumstances of the child or a person affected by the order have materially and substantially
changed since rendition of the order. Family Code § 14.08(c)(2) (West Supp. 1993). (3) In
modifying the amount of support, the trial court should be guided by the Child Support Guidelines
in the Family Code. (the "guidelines"). Family Code § 14.052(a) (West Supp. 1993). (4) An order
of support under the guidelines should be based on the net resources of the obligor and the
obligee. Family Code § 14.053(a) (West Supp. 1993). Additionally, the court should consider
such other factors as (1) the needs of the child; (2) the ability of the parents to contribute to the
support of the child; (3) any financial resources available for the support of the child; and (4) the
amount of possession of and access to the child. Family Code § 14.052(b) (West Supp. 1993). 
The court may set the amount of support outside the range recommended by the guidelines if other
relevant factors justify a variance. Family Code § 14.054 (West Supp. 1993).

 In the present case, the evidence consisted solely of Lyytinen's testimony. 
Concerning the children, she testified that they were eleven years older than at the time of the
divorce. In regard to Morris, Lyytinen stated he had graduated from medical school, and had
completed his medical residency in Florida. She made no assertions concerning his present
employment. She did testify to a conversation with Morris in which he told her that, after
graduating from medical school, he would be able to go into practice with his father and brother,
would "have it made financially," and that his income would be "in the neighborhood of
$200,000" per year. She conceded she did not know, however, whether Morris was licensed to
practice medicine, and did not have any personal knowledge of Morris's current income. 
Lyytinen gave no evidence about her own financial situation.

 We find the record contains no evidence pertaining to Morris's or Lyytinen's net
resources, their ability to contribute to the children's support, the needs of the children, or any
of the other statutory factors. Section 14.053(g) of the Family Code provides that the court shall
require such information of the parties in order that the court may accurately estimate their net
resources and ability to provide child support, and should request tax returns, financial statements
and current pay stubs. Without any of this information, the trial court lacked a sufficient factual
basis upon which to establish rationally the amount of Morris's child-support obligation. The
fixing of that obligation at $1,000 per month was, therefore, an abuse of discretion requiring
reversal of the trial-court order and remand of the cause. Reyna, 738 S.W.2d at 774; Landon,
724 S.W.2d at 938. We sustain Morris's fifth point of error. 

 In light of our disposition of point five, we do not address points one, two, three,
four and six pertaining to the order increasing child support.



ENFORCEMENT ORDER


 On the day of the hearing on the motion to modify, Lyytinen filed a motion to
enforce the original child-support order in Bastrop County district court. She requested that the
court hold Morris in contempt for failing to make numerous child-support payments and requested
that the arrearage be reduced to judgment. See Family Code § 14.313 (West Supp. 1993)
(allowing party seeking enforcement of support order by contempt to join claim to reduce
arrearage to judgment); see also Family Code § 14.41 (West 1986 & Supp. 1993) (providing for
judgment for past-due child support payments). Morris was present for the subsequent hearing
on October 8th. The court found him in contempt for failure to pay support in accordance with
the original support order. Further, the court rendered judgment against Morris for child-support
arrearage in the amount of $8,010 for the period September 1, 1984, through August 1, 1992. 
The court committed Morris to jail for sixty days, or until he paid Lyytinen the support arrearage,
costs and attorney's fees. After six days in jail, Morris was released after paying $1,897 of the
support arrearage, plus costs and attorney's fees. We assume for purposes of discussion that he
remains in constructive contempt.

 Morris raises four points of error concerning the enforcement order. He complains
in his first three points that the trial court erred by holding him in contempt. We do not have
jurisdiction to review a finding of contempt other than by an application for writ of habeas corpus. 
Wagner v. Warnasch, 295 S.W.2d 890, 893 (Tex. 1956); Saenz v. Saenz, 756 S.W.2d 93, 95
(Tex. App.--San Antonio 1988, no writ). (5) Therefore, we do not address Morris's first, second and
third points of error regarding the district court's contempt finding.

 Morris complains in his fourth point of error that the district court erred in its
determination of the amount of child-support arrearage. We may exercise appellate jurisdiction
over portions of the enforcement order other than the finding of contempt. See, e.g., Gawlik v.
Gawlik, 707 S.W.2d 256, 257-59 (Tex. App.--Corpus Christi 1986, no writ) (noting that contempt
finding was not appealable, but addressing trial court's modification of support, determination of
arrearages and refusal to order involuntary assignment of wages); Holder v. Holder, 528 S.W.2d
113, 115 (Tex. Civ. App.--Tyler 1975, no writ) (dismissing points of error relating to contempt
finding, and addressing point concerning judgment for delinquent support). Morris contends that
the Florida court's determination of arrearage supersedes the original support order to the extent
there is a conflict. He argues, therefore, that the court should not have re-calculated Morris's
arrearage under the original support order. We disagree.

 A RURESA proceeding is a remedy in addition to, not in lieu of, existing remedies. 
Fla. Stat. Ann. § 88.012 (West Supp. 1993). A support order issued pursuant to RURESA does
not nullify any other support order unless it specifically so provides. Fla. Stat. Ann. § 88.281
(West 1987). In this case, the Florida court order did not purport to supersede or nullify the
original Texas support order.

 Moreover, the Florida court's establishment of support arrearage under RURESA
does not affect the original Texas support decree. See Florida Dept. of Health and Rehab. Servs.
v. Cifneri, 429 So.2d 92, 94 (Fla. Dist. Ct. App. 1983). In Cifneri, the court held that a Florida
court's decision to enforce a lesser amount of monthly support under RURESA than provided for
in the original, out-of-state divorce decree would have no effect on the original decree. Id. 
Arrearages would continue to accumulate under the original decree, with appropriate credit for
payments made in accordance with the Florida order. Id.; see also State v. Borchers, 805 S.W.2d
880, 881-82 (Tex. App.--Corpus Christi 1991, writ denied) (interpreting RURESA as
contemplating the contemporaneous existence of two valid support orders).

 Therefore, the existence of the Florida RURESA order does not preclude an action
to enforce the original Texas support order. The trial court correctly based its arrearage
determination on the original support order. See Borchers, 805 S.W.2d at 882 (holding the trial
court erred in calculating arrearage based on a Texas RURESA order instead of on the original
support order). We overrule Morris's fourth point of error.

 In his fifth point Morris contends the trial court erred in refusing to impose
sanctions against Lyytinen and her attorney pursuant to Texas Rule of Civil Procedure 13. Rule
13 provides that when attorneys or parties sign a pleading they certify thereby that the pleadings
are not groundless and not brought for the purpose of harassment. Morris alleges that in the
motion for enforcement, Lyytinen and her attorney falsely claimed that Morris was in arrears in
the amount of $12,400 because that amount fails to credit him with certain payments he made
previously. At the beginning of the hearing on the motion for enforcement, Lyytinen
acknowledged these payments and waived her claims concerning those amounts. She requested
judgment for $8,010 in support arrearage. The amount requested for damages does not constitute
a violation of Rule 13. Tex. R. Civ. P. 13. We overrule Morris's fifth point of error.

 We therefore (1) reverse the trial-court order fixing Morris's child-support
obligation at $1,000 per month, and remand that portion of the cause to the trial court for further
proceedings; (2) affirm the trial-court order that fixes Morris's arrearage in child support at
$8,010 for the period September 1, 1984, through August 1, 1992; and (3) do not address
Morris's complaint regarding that element of the trial-court order holding him in contempt.



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Reversed and Remanded in Part; Affirmed in Part

Filed: November 10, 1993

Do Not Publish

1.   A majority of states, including Texas, have also enacted RURESA. Family Code
§§ 21.01-.43 (West 1986 & Supp. 1993); see also Table of Jurisdictions Wherein Act Has Been
Adopted located before section 21.01 of the Family Code.
2. [2]  In two separate briefs, Morris raises six points of error concerning the order increasing child
support and five points relating to the enforcement order. In order to avoid confusion over the
duplicate numbering of the points, we will address each set under headings indicating the court
order to which the points pertain. 
3. [3]  Since no findings of fact and conclusions of law were requested or filed, it is implied that
the trial court made all findings necessary to support its judgment. Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990). In his first and second points of error Morris attacks the legal and
factual sufficiency of the evidence to support the trial court's implied finding of a material and
substantial change in circumstances. Because we hold that the trial court abused its discretion in
establishing the amount of support, we assume without deciding that the evidence was legally and
factually sufficient to support the implied finding.
4. [4]  Although the original support order was issued in 1981 before the enactment of the Child
Support Guidelines in 1989, section 14.052(a) provides that the guidelines are intended to guide
the courts in any SAPCR including, without limitation, actions involving modification. 
Additionally, the court may consider the guidelines in making the threshold determination of
whether there has been a material and substantial change in circumstances. Family Code 
§ 14.056 (West Supp. 1993).
5. [5]  There is a narrow exception to this rule. An appellate court has jurisdiction to suspend
portions of a contempt order that purport to grant relief beyond the scope of the proceedings by
modifying previous orders in the absence of appropriate pleadings and proof. Stephens v.
Stephens, 543 S.W.2d 686, 688 (Tex. Civ. App.--Houston [1st Dist.] 1976, no writ); see also
Martin v. Martin, 519 S.W.2d 900, 902 (Tex. Civ. App.--Houston [1st Dist.] 1975, no writ)
(suspending portions of contempt order purporting to modify custody and visitation privileges). 
The exception is not applicable in this case.